**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| KELLY JONES, | : | Case No. 1:17-cv-414 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| TECHNOLOGY TRAINING SYSTEMS, INC., D/B/A ANTONELLI COLLEGE, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (Doc. 18)**

This case is before the Court on the motion of Plaintiff Kelly Jones for a default judgment. (Doc. 18). Defendant Technology Training Systems, Inc. d/b/a Antonelli College ("Antonelli") did not respond.

## I. PROCEDURAL HISTORY

Plaintiff filed this the Complaint (Doc. 1) against Defendant on June 16, 2017. Defendant filed its Answer (Doc. 3) on August 14, 2017. The parties then came before the Court by telephone for a Preliminary Pretrial Conference on April 9, 2018, at which time a Calendar Order was entered.

In December 2018, this matter came before the Court for an informal discovery conference pursuant to S.D. Ohio Civ. R. 37.1 related to Defendant's delay in producing responsive documents and making its 30(b)(6) witness available for a deposition. The Court warned Defendant that any further failure to cooperate with discovery could lead to

sanctions. (*See* December 12, 2018 Minute Entry and Notation Order). Discovery continued to stall in the spring and summer of 2019 due to health issues of Defendant's 30(b)(6) witness. (*See* March 25, 2019 Notation Order).

On August 5, 2019, the parties came before the Court for a status conference. Counsel for Defendant, Jonathan Hyman, notified the Court that Defendant no longer intended to defend the action. The Court then permitted the Plaintiff to proceed to move for an entry of default judgment. (*See* August 5, 2019 Minute Entry and Notation Order).

On August 6, 2019, the Clerk properly entered a default. (Doc. 16). Subsequently, Plaintiff filed the instant motion for default judgment on October 7, 2019. (Doc. 18).

## II. FACTUAL BACKGROUND

Plaintiff asserts claims under the Family Medical Leave Act ("FMLA"), Title VII of the 1964 Civil Rights Act ("Title VII"), and Ohio Rev. Code § 4112.02. (Doc. 1).

Plaintiff began working for Antonelli, a for-profit career training school, as a Loan Repayment Officer in August 2012. (*Id.* ¶¶ 7-8). Plaintiff successfully performed her job and received a raise and promotion to Corporate Assistant Director of Loan Repayment on January 30, 2013. (*Id.* ¶¶ 11-12). In 2014, Plaintiff gave birth to her first child. In lieu of taking a leave of absence, Ms. Jones worked from home for eight weeks, maintaining her full workload, before returning to work on campus full-time. (*Id.* ¶ 14).

In February 2016, Antonelli hired a male Associate Director of Student finance, Jarrett Dean. Plaintiff trained Dean and they worked on similar projects. Antonelli

employed three other individuals in similar loan repayment positions. Plaintiff had more experience and seniority at Antonelli than any of the other individuals with similar positions. (*Id.* ¶¶ 15-16).

In May 2016, Plaintiff informed her supervisor, Leah Elkins, that she was pregnant with her second child. (*Id.* ¶ 17). In August 2016, Plaintiff told Elkins and campus president Tracy Fletcher-Garrett that she intended to take maternity leave following the birth of her second child. (*Id.* ¶ 18). On August 23, 2016, Antonelli terminated Plaintiff's employment. Antonelli told Plaintiff that her position was being eliminated. (*Id.* ¶ 19). Antonelli did not terminate the employment of any of Plaintiff's similarly situated colleagues who were male, not pregnant, and had not told Antonelli that they intended to take FMLA leave.

### III. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 U.S. Dist. LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319. 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable

3

certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June. 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07-cv-990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

### IV. ANALYSIS

Plaintiff moves for default judgment and an award of damages against Defendant for FMLA interference, 29 U.S.C. § 2617, pregnancy and gender discrimination in violation of Title VII, 42 U.S.C. § 2000e-2, and pregnancy discrimination in violation of Ohio law, Ohio Rev. Code § 4112.02. Defendant having defaulted, the factual allegations in the complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995).

Upon review of the record, the undersigned finds that default judgment is warranted in this case. Defendant has made clear to the Court that it has no intention of defending this action. (*See* August 5, 2019 Minute Entry and Notation Order). Based on the allegations in the Complaint, which the Court accepts as true, and the averments in affidavits submitted in support of default judgment, the Court finds that Defendant violated the FMLA, Title VII, and Ohio law. With liability established, the Court must determine the extent of damages.

To ascertain a sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351,

4

354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12-cv-962, 2012 U.S. Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. 2:06-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007).

Here, Plaintiff seeks $88,735.97 in back pay, $88,735.97 in liquidated damages, and $22,542.31 for attorneys' fees and costs for a total amount of $111,188.28.

**A. Back Pay**

The "FMLA provides that any employer who interferes with an employee's rights under the act is liable for damages that include, among other things, 'any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation ....'" *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 557 (6th Cir. 2006) (quoting 29 U.S.C. § 2617(a)(1)). Additionally, "successful Title VII plaintiffs are presumptively entitled to back pay." *Pittington v. Great Smoky Mt. Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018) (citation omitted); *see* 42 U.S.C. § 2000e–5(g)(1). The plaintiff bears the burden of proving damages with "reasonable certainty." *Id.* Back pay is calculated by subtracting "the amount that the plaintiff actually earned while being discriminated against [from] the amount that the plaintiff would have earned if no discrimination had occurred." *Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 821 (6th Cir.), *cert. denied*, ––– U.S. ––––, 137 S.Ct. 198, 196 L.Ed.2d 128 (2016).

5

Plaintiff's motion for default judgment attaches the Affidavit of Kelly Jones (Doc. 18-2) outlining the back pay she requests. In Plaintiff's last full year of employment at Antonelli, she earned $68,179 ($1,311.13 per week), and she was earning that salary when she was terminated on August 23, 2016.  (*Id.* ¶ 3).  Plaintiff was unemployed from her termination on August 23, 2016 until she gained new employment on May 15, 2017. Plaintiff attests that she diligently searched for new employment while unemployed. Plaintiff seeks $49,822.94 in back pay for her 38 weeks of unemployment (38 weeks multiplied by $1,311.13).  (*Id.* ¶ 4).  The Court finds that Plaintiff has proven with reasonable certainty that she is entitled to $49,822.94 from Defendant for the period she was unemployed.

At Plaintiff's new job, she earns $50,884 per year ($978.54 per week).  (*Id.* ¶ 5). Plaintiff earns $332.59 fewer dollars per week in her current job than she did while employed for Defendant.  Plaintiff seeks $38,913.03 in back pay for the 117 weeks from May 15, 2017 to August 11, 2019 (117 weeks multiplied by $332.59) during which she was paid less than she was while working for Antonelli.  (*Id.* ¶ 6).  The Court finds that Plaintiff has proven with reasonable certainty that she is entitled to $49,822.94 from Defendant for the 117 weeks she earned lower wages.

Therefore, the Court finds that Plaintiff is entitled to $88,735.97 in back pay. Moreover, while Plaintiff's motion for default judgment does not seek prejudgment interest, FMLA actions require the award of interest on lost wages.  See 29 U.S.C.

6

§ 2617(a)(1)(A)(ii).  Accordingly, Plaintiff is entitled to prejudgment interest at the prevailing interest rate[1] on her award of back pay.

### B. Liquidated Damages

"The FMLA provides that a court shall award liquidated damages equal to the damages due to lost compensation plus interest." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 407 (6th Cir. 2003); *see* 29 U.S.C. § 2617(a)(iii).  Here, Plaintiff seeks liquidated damages equal to the $88,735.97 in back pay.  Consistent with the FMLA, the Court finds that Plaintiff is entitled to the $88,735.97 in liquidated damages, plus interest at the prevailing rate.

### C. Attorneys' Fees and Costs

Plaintiff also seeks an award of attorneys' fees.  Under the FMLA, a court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).  District courts use the lodestar method to determine an award of reasonable attorneys' fees.  The lodestar amount is "calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).

---

[1] "The prevailing rate on which interest is to be calculated is the state statutory rate as set forth in O.R.C. § 1343.03(A)." *Ellert v. Chipotle Mexican Grill, Inc.*, No. 1:07CV026, 2008 WL 11351569, at *1 n.1 (S.D. Ohio Dec. 16, 2008) (citing *Verhoff v. Time Warner Cable, Inc.*, 2007 U.S. Dist. LEXIS 72201 (N.D. Ohio Sept. 26, 2007).

### 1. Reasonable Hourly Rate

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring,* 36 F.3d 517, 531–32 (6th Cir. 1994), *cert. denied,* 514 U.S. 1127 (1995). "A reasonable fee is one that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir.2004). To determine a reasonable hourly rate, a useful guideline is the prevailing market rate in the relevant community, defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command." *Id.* at 447 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The Court may also consider an attorney's own normal billing rates to help calculate a reasonable fee. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).

Plaintiff has submitted the Affidavit of Robert A. Klingler, attorney for Plaintiff, in support of her request for attorneys' fees. (Doc. 13-1). Plaintiff seeks $495.00 per hour for work done from January 1, 2017 to December 31, 2018 and $545.00 work since January 1, 2019 for Mr. Klingler's work. (Doc. 18-3 at ¶ 10). Mr. Klingler was elected partner at Keating, Muething, & Klekamp, PLL in 1992, founded his own firm in 1994, and has been named a top 50 Super Lawyer in Cincinnati each year since 2006. (Doc. 18-3 at ¶¶ 3-7). Plaintiff also seeks between $200.00 and $275.00 per hour for work done by associate attorneys based on their years of legal experience, and $125.00 per hour for work performed by a law clerk. (*Id*. at ¶¶ 11-14).

Considering the experience of the attorneys in this case, the attorneys' normal billing rates, and the importance of attracting competent counsel to take on the important work of challenging discrimination in the workplace, the Court finds that the requested hourly rate for Plaintiff's attorneys is reasonable.

### 2. Reasonable Number of Hours

In determining whether the number of hours expended on a case is reasonable, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). "The documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation." *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 913 (N.D. Ohio 2010), *aff'd* in part, *rev'd* in part, 499 F. App'x 538 (6th Cir. 2012) (citing *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502, n. 2 (6th Cir.1984). Additionally, counsel is expected to exercise billing judgment by excluding "hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Mr. Klingler submitted a timesheet of the hours billed in this case (Doc. 18-3, Ex. 1) and removed hours that were duplicative or excessive. (*Id.* at ¶ 18). The attorneys and law clerks working on this case billed 77.55 total hours. While this is high for a case ending in default judgment, Defendant initially defended this action and Plaintiff had to

9

raise several discovery disputes with the Court due to delays by Defendant. After a thorough review of the timesheet of hours billed, the Court finds that the number of hours expended on this case by counsel was reasonable.

Accordingly, Plaintiff is entitled to $21,173.75 in attorneys' fees.

### 3. Costs

Finally, Plaintiff seeks $1,278.56 in costs. (Doc. 13-11). The FLMA authorizes an award of costs. *See* 29 U.S.C. § 2617(a)(3). Upon review of the lists of costs, expenses, and fees (Doc. 18-3, Ex. 2), the Court finds that $1,278.56 in costs is reasonable and compensable pursuant to the FLMA.

## V. CONCLUSION

For these reasons, Plaintiff's motion for default judgment (Doc. 18) is **GRANTED**. Accordingly:

1. Plaintiff is granted default judgment,

2. Plaintiff is awarded $88,735.97 in back pay, plus interest at the applicable statutory rate,

3. Plaintiff is awarded $88,735.97 in liquid damages, plus interest at the applicable statutory rate,

4. Plaintiff is awarded $22,452.31 in attorneys' fees and costs.

5. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 7/14/2020

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge